1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**EASTERN DISTRICT OF CALIFORNIA**

10
11 | MIKE GARZA,

12 |        Plaintiff,

13 |    v.

14 | CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

15

16 |        Defendant.

| ) Case No.: 1:13-cv-00891 - JLT |
| ) |
| ) ORDER REMANDING THE ACTION PURSUANT |
| ) TO SENTENCE FOUR OF 42 U.S.C. § 405(g) |
| ) |
| ) ORDER DIRECTING ENTRY OF JUDGMENT IN |
| ) FAVOR OF PLAINTIFF MIKE GARZA AND |
| ) AGAINST DEFENDANT CAROLYN W. COLVIN, |
| ) ACTING COMMISSIONER OF SOCIAL |
| ) SECURITY |

17       Mike Garza ("Plaintiff") asserts he is entitled to benefits under the Social Security Act. Plaintiff

18 seeks judicial review of the decision denying benefits, asserting the administrative law judge erred in

19 evaluating the medical evidence and the credibility of his subjective complaints.  For the reasons set

20 forth below, the administrative decision is **REMANDED** for further proceedings.

21 <u>**PROCEDURAL HISTORY**</u>

22       Plaintiff applied for to supplemental security income and disability insurance benefits on July

23 28, 2010, alleging his disability began on July 15, 2010.  (Doc. 13-6 at 2-4.)  The Social Security

24 Administration denied his claims initially and upon reconsideration.  (Doc. 13-3 at 15.)  After

25 requesting a hearing, Plaintiff testified before an administrative law judge ("ALJ") on November 3,

26 2011.  (*Id.*)  The ALJ determined Plaintiff was not disabled under the Social Security Act, and issued

27 an order denying benefits on November 29, 2011.  (*Id.* at 15-22.)  Plaintiff requested review by the

28 Appeals Council of Social Security, which denied review of the ALJ's decision on March 14, 2013.

1  (Doc. 13-3 at 5.)  Therefore, the ALJ's determination became the decision of the Commissioner of

2  Social Security ("Commissioner").

3  <center>**STANDARD OF REVIEW**</center>

4         District courts have a limited scope of judicial review for disability claims after a decision by

5  the Commissioner to deny benefits under the Social Security Act.  When reviewing findings of fact,

6  such as whether a claimant was disabled, the Court must determine whether the Commissioner's

7  decision is supported by substantial evidence or is based on legal error.  42 U.S.C. § 405(g).  The

8  ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal

9  standards were applied and the findings are supported by substantial evidence.  *See Sanchez v. Sec'y of*

10 *Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

11        Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a

12 reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S.

13 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)).  The record as a whole

14 must be considered, because "[t]he court must consider both evidence that supports and evidence that

15 detracts from the ALJ's conclusion."  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

16 <center>**DISABILITY BENEFITS**</center>

17        To qualify for benefits under the Social Security Act, Plaintiff must establish he is unable to

18 engage in substantial gainful activity due to a medically determinable physical or mental impairment

19 that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C.

20 § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if:

21
22
23
24
> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

25 42 U.S.C. § 1382c(a)(3)(B).  The burden of proof is on a claimant to establish his disability.  *Terry v.*

26 *Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).  Once a claimant establishes a prima facie case of

27 disability, the burden shifts to the Commissioner to show the claimant is able to engage in substantial

28 gainful employment.  *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

<center>2</center>

## DETERMINATION OF DISABILITY

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920 (a)-(f). The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level. *Id.* The ALJ must consider objective medical evidence and opinion hearing testimony. 20 C.F.R. §§ 416.927, 416.929.

### A.   Medical Evidence

Plaintiff was treated by Dr. Levy at the Fresno Nephrology Medical Group "until March 2008 when he lost his insurance." (Doc. 13-8 at 2.) He returned to the offices in July 2010 "for followup (sic) of his kidney disease, hypertension and proteinuria." (*Id.*) Dr. Mandeep Singh found Plaintiff had "[c]hronic kidney disease stage 2 with proteinuria due to diabetic nephropathy." (*Id.*) Dr. Singh noted Plaintiff's primary care physician treated his diabetes and chronic pain. (*Id.*)

In August 2010, Plaintiff reported he had low back pain as well as "generalized body pain." (Doc. 13-8 at 8.) He continued to report pain in his right hip, right knee, and left elbow in October 2010. (*Id.* at 10.)

Dr. James Murphy completed a psychological evaluation on November 16, 2010. (Doc. 13-8 at 35-39.) Plaintiff reported that he was "unable to work due to arthritis (hurts everywhere), poor vision (10 years due to diabetes), sleep apnea (uses a sleep apnea mask), high blood pressure (controlled by medication), diabetes (neuropathy due to diabetes), headaches (since 1998), and depression." (*Id.* at 35.) In addition, Plaintiff reported he stopped using drugs in 1984, but Dr. Murphy noted he had "some suspicion that he may have used more recently than 1984." (*Id.* at 36.) Dr. Murphy administered the Bender Visual Motor Gestalt Test, II Edition; Wechsler Adult Intelligence Scale, IV Edition; and Wechsler Memory Scale, IV Edition. (*Id.* at 37.) On the Bender Visual Motor Gestalt Test, Plaintiff's "performance was in the High Average to Average Range." (*Id.*, emphasis omitted.) Dr. Murphy noted Plaintiff's IQ scores placed him "at the Low Average Level of Intelligence." (*Id.*) Further, Dr. Murphy

observed that Plaintiff's "memory testing battery indicates he has problems with memory but . . . his intelligence testing belies his poor memory scores." (*Id.* at 38, emphasis omitted.) He opined:

> [Plaintiff] appears not to have difficulty handling everyday activities of daily living: such as bathing, eating meals, and socializing. He understood what was asked of him concerning the various tasks during the mental status examination. He did not demonstrate any difficulties understanding the simple instructions of the various tasks, confidentiality, or the reason for the evaluation. . . . He appeared to understand and follow simple, basic instructions without difficulty.

(*Id.* at 13-8 at 39.) Dr. Murphy gave Plaintiff a GAF score of 70, and concluded he was "capable of performing Simple Repetitive Tasks (SRT) on a regular basis." (*Id.*)

Dr. Rustom Damania performed an internal medicine evaluation on November 18, 2010. (Doc. 13-8 at 43-48.) Plaintiff reported he had diabetes mellitus, hypertension, chronic renal insufficiency, bronchial asthma, paresthesias, heart problems, low back pain secondary to chronic osteoarthritis, and sleep apnea. (*Id.* at 43.) Dr. Damania found Plaintiff had "moderate to severe" bilateral bronchospasms and "appear[ed] to be using his accessory muscles of respiration." (*Id.* at 45.) Dr. Damania determined Plaintiff had normal ranges of motion in his shoulders, elbows, wrists, hips, knees, and ankles; his strength was "5/5 in all extremities;" and there was "no tenderness to palpation in the midline or paraspinal areas" of his back. (*Id.* at 46-47.) Dr. Damania offered the following functional capacity:

> [Plaintiff] should be able to lift and carry 10 pounds occasionally and 10 pounds frequently. The patient can stand and walk less than four hours out of an eight hour work day with normal breaks. The patient can sit four to six hours. No assistive device is necessary for ambulation. No frequent bending, stooping, crouching or kneeling but occasionally only. No climbing or balancing because of his chronic obstructive pulmonary disease. No manipulative limitations. No relevant visual or communicative impairments.

(*Id.* at 48.)

Dr. Funkenstein completed a psychiatric review technique and mental residual functional capacity on December 16, 2010. (Doc. 13-8 at 49-62.) Dr. Funkenstein opined Plaintiff had depression, not otherwise specified, that was not severe. (*Id.* at 49, 52.) According to Dr. Funkenstein, Plaintiff had no restriction of activities of daily living; no difficulties in maintaining social functioning, concentration, persistence, or pace; and no episodes of decompensation. (*Id.* at 57.)

In December 2010, Plaintiff told his doctor that his leg pain caused weakness and he was "unable to stand long periods of time." (Doc. 13-8 at 68.)

4

Dr. Jackson reviewed the findings of the consultative examination performed by Dr. Damania on December 20, 2010, and noted that there was no "evidence of any significant physical findings or treatment." (Doc. 13-8 at 62.) Further, Dr. Jackson observed Plaintiff reported "difficulty with just about everything, yet he is going to trade school, cares for his children and drives the car." (*Id.*) Dr. Jackson concluded the opinion of Dr. Damania was "overly restrictive, given the actual physical findings." (*Id.*)

In January 2011, Plaintiff complained of pain in his knees, low back and abdomen. (Doc. 13-8 at 67.) Through February and March 2011, Plaintiff reported his low back pain "radiat[ed] down both legs," and that he was unable to sleep without medication." (*Id.* at 63-65.) Further, Plaintiff reported he had numbness in both hands. (*Id.* at 64.)

Plaintiff began to be treated at the Fresno Medical Center on August 25, 2011. (Doc. 13-8 at 95.) Chetana Mayer, PA, noted Plaintiff was "alert and oriented x 3" and determined his motor strength was "5/5 equal bilaterally." (*Id.*) In addition, Plaintiff's range of motion was normal on his musculoskeletal exam. (*Id.*) Dr. Gurmej Dhillon diagnosed Plaintiff with hypothyroidism, migraine headaches, diabetes mellitus, hypertension, hyperlipidemia, allergic rhinitis, asthma, obstructive sleep apnea, and peripheral polyneuropathy. (*Id.*) At a follow-up appointment in September 2011, Plaintiff reported his feet felt like they were "burning," and medication was "not helping with neuropathy." (*Id.* at 87.)

**B.      Administrative Hearing**

1.      Plaintiff's Testimony

Plaintiff testified before the ALJ on November 3, 2011. (Doc. 13-3 at 30.) He reported that he had anxiety and depression "almost all the time," for which he took Prozac. (*Id.* at 39-40.) Also, Plaintiff said he had diabetes, with diabetic neuropathy though his body. (*Id.* at 40.) He explained that his legs felt like they were "burning up all the time." (*Id.* at 41.) Further, Plaintiff said he had pain in his back, legs, hands, and neck. (*Id.* at 43.) He stated that without pain medication, it was "very hard … to sleep and very hard for [him] to do things." (*Id.*)

He reported he had difficulty being on his feet for long periods of time, and estimated he was able to stand or walk "about an hour or so." (Doc. 13-3 at 41.) Plaintiff believed he was able to sit "30

to 45 minute or so" at one time.  (*Id.*)  Plaintiff stated that he could "force" himself to stand "at least like four hours" or sit "about two to three hours" in an eight-hour day.  (*Id.* at 42-43.)  He did not believe he was able to work a full time job due to the pain in his legs.  (*Id.* at 48.)

Plaintiff stated that he had worked for a gerontologist for "a month or two" by "[t]aking care of the elderly [and] cooking for them."  (*Id.* at 37.)  Plaintiff testified that he "walked out" of the job because he did not like how he was treated.  (*Id.* at 37-38.)  Similarly, Plaintiff "walked out" of his job at Round Table Pizza after having "words and stuff" with the manager.  (*Id.* at 38-39.)

Plaintiff testified that he enrolled in a program at the Institute of Technology "to become a chef," but started having problems with his hands.  (Doc. 13-3 at 48.)  Plaintiff said that he "ended up dropping some pots and stuff and they were hot liquids and stuff and [he] almost burned somebody."  (*Id.*)  He reported that he talked to the doctor about the problems with his hands "and she excused [him] from the school."  (*Id.*)  Plaintiff stated he still wanted to finish school when he had financial aid because it had "always been a dream of [his] to be an actual chef."  (*Id.*)

### 2.     Vocational Expert's Testimony

Vocational expert Judith Nigerian ("VE") classified Plaintiff's past relevant work as a teacher's aide as "light and SVP three, semi-skilled." (Doc. 13-3 at 50.)  In addition, VE classified the work as "manager of food service," as medium work because Plaintiff performed food preparation and clean-up in addition to his duties of supervising, hiring, firing, training, and banking for Round Table Pizza.  (*Id.* at 50-51.)

## C.    The ALJ's Findings

Pursuant to the five-step process, the ALJ determined Plaintiff did not engage in substantial gainful activity after the alleged on-set date of July 15, 2010.  (Doc. 13-3 at 17.)  Second, the ALJ found Plaintiff's diabetes and diabetic neuropathy were severe impairments.  (*Id.*)  The ALJ concluded Plaintiff's "obesity, hypertension, hyperlipidemia, osteoarthritis, headaches, sleep apnea, chronic kidney disease stage 2, bronchial asthma, and chronic obstructive pulmonary disease" were non-severe because they "cause no more than minimal limitation upon basic work activity."  (*Id.*)  Further, the ALJ found Plaintiff did not have an impairment or a combination of impairments that met or medically equaled a Listing.  (*Id.* at 18.)

6

The ALJ determined Plaintiff had the residual functional capacity ("RFC") "to lift and carry 50 pounds occasionally and 25 pounds frequently, and sit, and stand or walk, 6 hours each in an 8-hour day." (Doc. 13-3 at 18.)  With this RFC, the ALJ found Plaintiff was capable of performing his past relevant work a teacher's aide and pizza manager.  (*Id.* at 21.)  In the alternative, the ALJ found Plaintiff's RFC allowed him "to perform jobs that exist in the national economy." (*Id.*)  Therefore, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act.  (*Id.*)

## DISCUSSION AND ANALYSIS

Plaintiff argues the Commissioner's decision to deny his application for benefits was improper> He asserts the ALJ erred in evaluating the medical evidence by rejecting the opinion of Dr. Damania, and failed to properly assess the credibility of Plaintiff's subjective complaints.  (Doc. 17 at 7-23.)  On the other hand, Defendant argues that the ALJ "properly rejected" Dr. Damania's opinion and the decision is supported by substantial evidence in the record (Doc. 18 at 11-12.)

### A.    Evaluation of the Medical Evidence

In this circuit, cases distinguish the opinions of three categories of physicians: (1) treating physicians; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither examine nor treat the claimant.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Generally, the opinion of a treating physician is afforded the greatest weight in disability cases, but it is not binding on an ALJ in determining the existence of an impairment or on the ultimate issue of a disability.  *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  Also, an examining physician's opinion is given more weight than the opinion of a non-examining physician.  20 C.F.R. § 404.1527(d)(2).

A physician's opinion is not binding upon the ALJ, and may be discounted whether another physician contradicts the opinion. *Magallanes*, 881 F.2d at 751. An ALJ may reject a contradicted opinion of a physician with "specific and legitimate" reasons, supported by substantial evidence in the record.  *Lester*, 81 F.3d at 830; *see also Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).  If there is conflicting medical evidence, "it is the ALJ's role to determine credibility and to resolve the conflict." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).  The ALJ's resolution of the conflict must be upheld when there is "more than one rational interpretation of the evidence."  *Id.*; *see also*

*Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).  Here, the ALJ was required to set forth specific and legitimate reasons for giving less weight to the opinion of Dr. Damania because it conflicted with the opinion of Dr. Funkenstein.

The ALJ noted Dr. Damania "concluded Mr. Garza could lift and carry 10 pounds, stand and walk less than four hours, and sit for four to six hours in an eight-hour day."  (Doc. 13-3 at 19.) However, the ALJ gave the opinion "little weight because it is inconsistent with the medical record and examination findings." (*Id.*)  In addition, the ALJ found the opinion was "inconsistent with Mr. Garza's reported activities." (*Id.*)

### 1.   Plaintiff's level of activity

The Ninth Circuit has determined that the opinion of a physician may be given less weight when the physician sets forth restrictions that "appear to be inconsistent with the level of activity that [the claimant] engaged in." *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001).  Here, the ALJ noted Plaintiff was able to "go to trade school, care for his children, do household chores, and drive a car." (Doc. 13-3 at 18.)  However, the ALJ does not explain how driving, ability to do household chores, or care for his children was inconsistent with the opinion of Dr. Damania that Plaintiff could not lift more than 10 pounds and was limited to standing and walking "less than four hours" in an eight-hour day. Further, Plaintiff testified that he was unable to complete the culinary course because he dropped pots with hot liquids, and received a note from his physician regarding the problem with his hands. (*See* Doc. 13-3 at 48.) Consequently, these activities do not support the decision to give less weight to the opinion of Dr. Damania.

### 2.   Inconsistency with the medical record

The Ninth Circuit has determined that physician's opinions may be rejected where it is "unsupported by the record as a whole."  *Mendoza v. Astrue*, 371 Fed. Appx. 829, 831-32 (9th Cir. 2010) (citing *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2003)).  Further, an opinion may be rejected when an ALJ finds inconsistencies between a treating doctor's assessment and his own medical records.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *see also Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999) (explaining internal inconsistencies within a physician's report supports the decision to discount the opinion of a physician).

8

Importantly, however, when an ALJ believes a physician's opinion is unsupported by the objective medical evidence, the ALJ has a burden to "set[] out *a detailed and thorough summary of the facts and conflicting clinical evidence*, stating his interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986) (emphasis added). The Ninth Circuit explained: "To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).  Here, although the ALJ opined the limitations set forth by Dr. Damania was "inconsistent with the medical records and examination," he fails to identify and discuss specific evidence that conflicted with the physician's opinions that Plaintiff was limited to lifting and carrying 10 pounds, standing and walking less than four hours, and sitting for four to six hours.  Rather, the ALJ offered only his conclusion that the record was "inconsistent with" the opinions.  Because the ALJ failed to set forth "a detailed and thorough summary of the facts and conflicting clinical evidence," the ALJ failed to properly evaluate the limitations identified by Dr. Damania.  *See Cotton*, 799 F.2d at 1408.

Moreover, the ALJ failed completely to discuss Dr. Damania's opinion that Plaintiff had postural limitations including "[n]o climbing or balancing because of his chronic obstructive pulmonary disease" and "[n]o frequent bending, stooping, crouching or kneeling but occasionally only."  (*See* Doc. 13-8 at 48.)  Because the ALJ failed to explain in any manner why these limitations were not included in the RFC, he failed to carry the burden to provide "specific and legitimate reasons" for rejecting portions of Dr. Damania's opinion.  *See Lester*, 81 F.3d at 830.

**B.      Remand is appropriate in this matter**

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court.  *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000).  Except in rare instances, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation.  *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)).  Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence,
> (2) there are no outstanding issues that must be resolved before a determination of

disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996).  In addition, an award of benefits is directed where no useful purpose would be served by further administrative proceedings, or where the record is fully developed.  *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988).

Applying the *Smolen* factors to this case, the ALJ failed to set forth legally sufficient reasons to reject the remainder of Dr. Damania's opinion by identifying conflicting evidence in the record.  The ALJ failed to address the postural limitations identified by Dr. Damania, and the vocational expert was not questioned regarding such limitations.  Thus, the matter should be remanded for the ALJ to re-evaluate the medical evidence and obtain testimony from the vocational expert regarding whether Plaintiff would be able to perform his past relevant work.

## CONCLUSION AND ORDER

For all these reasons, the Court concludes the ALJ erred in evaluating the medical evidence and in rejecting the opinion of Dr. Damania.  Because the ALJ failed to apply the correct legal standards, and the decision should not be upheld by the Court.  *See Sanchez*, 812 F.2d at 510.  The Court offers no findings on the remaining issue identified by Plaintiff in his opening brief, because remand is appropriate for further proceedings.

Based upon the foregoing, **IT IS HEREBY ORDERED**:

1.     The matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision; and

2.     The Clerk of Court **IS DIRECTED** to enter judgment in favor of Plaintiff Mike Garza and against Defendant, Carolyn Colvin, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **June 26, 2014**                          **/s/ Jennifer L. Thurston**
                                                      UNITED STATES MAGISTRATE JUDGE